UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MASON TENDERS DISTRICT COUNCIL
WELFARE FUND, MASON TENDERS
DISTRICT COUNCIL PENSION FUND,
MASON TENDERS DISTRICT COUNCIL
ANNUITY FUND, MASON TENDERS
DISTRICT COUNCIL TRAINING FUND,
MASON TENDERS DISTRICT COUNCIL
HEALTH AND SAFETY FUND, and
DOMINICK GIAMMONA, as Funds'
Contributions/Deficiency Manager,

                    Plaintiffs,

-against-

BLADE CONTRACTING, INC., and BLADE
GENERAL CONTRACTING, INC.,

                    Defendants.

---

22-CV-9609 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

In this action for unpaid benefit contributions, the Court granted in part and denied in part Plaintiffs' Motion for Summary Judgment. Before the Court now is Plaintiffs' damages and attorneys' fees calculations ("Damages Briefing"), and Defendants' subsequent motion to stay the judgment pending appeal ("Stay Motion"). For the reasons stated herein, Plaintiffs' requested damages are granted in part, with the Court reducing the principal delinquency, and Defendants' Stay Motion is granted upon payment of a supersedeas bond.

## BACKGROUND

Familiarity with the facts of this case, as discussed in the Court's Opinion and Order at ECF No. 70 ("Liability Opinion"), is assumed. On March 27, 2025, the Court granted Plaintiffs' Motion for Summary Judgment, finding that Plaintiffs were "entitled to damages under the collective bargaining agreement and the Employment Retirement Income Security Act." Liability

Opinion at 2. The Court determined that Defendants were joint and severally liable for Blade Contracting's failure to satisfy its obligations under the Master Collective Bargaining Agreement ("CBA") it held with the Mason Tenders Union. *Id.* at 22. However, the Court also found that unpaid contributions for work prior to November 10, 2016, were time barred, so it did not rule on damages and ordered Plaintiffs to submit a proposed judgment for itemized damages, fees, and costs. *Id.* at 25–26.

Plaintiffs timely filed their Damages Briefing, which Defendants opposed. *See* ECF Nos. 72–75. Shortly after the parties finished briefing damages and attorneys' fees, Defendants submitted a motion to stay the judgment. *See* ECF Nos. 77, 81–83. Defendants appealed the Court's Liability Opinion on April 24, 2025. ECF No. 71. However, the appeal has been stayed in the Second Circuit pending an entry of final judgment on Plaintiffs' Summary Judgment Motion. *See* ECF No. 13, Case No. 25-1045 (2d Cir.).

In total, Plaintiffs seek damages in the amount of $538,139.32, comprising the outstanding principal delinquency, interest, liquidated damages, imputed audit costs, legal fees, and costs. ECF No. 72 ("Lyons Dec.") ¶ 43.

### PLAINTIFFS' PROPOSED ITEMIZATION OF DAMAGES

| | |
|---|---|
| Outstanding Principal | $150,731.57 |
| Late Interest (as of 4/30/25) | $76,812.63 |
| Liquidated Damages | $76,812.63 |
| Imputed Audit Costs | $79,770.29 |
| Legal Fees | $151,720.50 |
| Costs | $2,291.80 |
| TOTAL DAMAGES | $538,139.42 |

In their briefing, Plaintiffs contend that the principal delinquency alleged in their Summary Judgment Motion remains unchanged. ECF No. 73 ("Damages Briefing"); *see also* Lyons Dec. ¶ 6. Because the first audit finding arose from work performed in 2017, the damages previously sought by Plaintiffs are all within the statute of limitations. Lyons Dec. ¶ 6. They further claim

late interest in an amount calculated according to rates set by the Employee Benefits Security Administration, a division of the Department of Labor—as required by the CBA. *See id.* ¶ 8 (citing ECF No. 51-2 ("CBA") Art. VI § 17(g)(2). They claim liquidated damages pursuant to the statutory ERISA awards and the CBA. Lyons Dec. ¶ 14; *see also* 29 U.S.C. § 1132(g)(2)(C); CBA Art. VI § 17(g)(3). Finally, Plaintiffs claim legal fees and costs to cover 641.2 hours of attorney time, 38.9 hours of paralegal time, and costs associated with filing, service of process, and depositions. Lyons Dec. ¶¶ 25, 40–42.

Defendants oppose the motion, contending that the delinquency was miscalculated, the CBA only allows a reasonable fee, the legal fees and costs requested are excessive, and that all imputed costs—including interest, liquidated damages, and imputed audit costs—should be rejected. *See* ECF No. 75 ("Opp. to Damages Briefing"). In particular, Defendants argue that the proposed delinquency contains an excess of 1,030.5 hours, because some Local Hires "did not do jurisdictional work of the Mason Tenders/Laborers" and the hour counts included time when benefits did not accrue. *See id.* at 6.

Defendants also move to stay the execution of the Judgment or any proceedings to enforce the Judgment, pending its appeal to the Second Circuit, without requiring it to post a supersedeas bond, pursuant to Rules 8(a) and 62(c) of the Federal Rules of Civil Procedure. ECF Nos. 81–83. Plaintiffs oppose the motion, arguing that Defendants' admitted inability to pay requires posting of a supersedeas bond. ECF No. 78.

**LEGAL STANDARD**

As the Court's Liability Opinion stated:

> Plaintiffs in Section 515 cases may recover (i) interest on the unpaid contributions; (ii) liquidated damages; and (iii) reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2)(A)-(D). The applicable interest rate is provided by the governing agreement. *Id.* § 1132(g)(2). Section 502(g)(2)

3

> of ERISA also states where "judgment in favor of the [fund] is awarded, the court shall award the [fund]" the unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees and costs, and other legal or equitable relief the Court deems appropriate. 29 U.S.C. § 1132(g). "Costs" include auditor fees if provided for in the CBA. *Trs. of Four Joint Bds. Health & Welfare & Pension Funds v. Penn Plastics, Inc.*, 864 F. Supp. 342, 350-51 (S.D.N.Y. 1994); *accord Trs. of the Operating Eng'rs Loc. 137 v. WJL Equities Corp.*, No. 14-CV-2640 (VB), 2016 WL 1369547, at *3 (S.D.N.Y. Apr. 6, 2016). The statute also permits liquidated damages up to the greater of (i) the interest on the total unpaid contribution or (ii) a percentage of the unpaid contribution set forth in the CBA not to exceed 20%. 29 U.S.C. § 1132(g)(2)(C).

Liability Opinion at 24–25.

"In determining reasonable attorneys fees the court must calculate a 'lodestar' figure based upon the hours reasonably spent by counsel multiplied by the reasonable hourly rate." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (cleaned up). The "lodestar" figure should be comparable to prevailing rates in the district where the court sits for similar services "of lawyers of reasonably comparable skill, experience, and reputation." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Polk v. New York State Dep't of Correctional Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

## DISCUSSION

This discussion proceeds in two parts. First, the Court finds that Plaintiffs are entitled to most of the damages, fees, and costs they seek, with an adjustment downward for employees that should not properly have been included in the audit. And second, the Court finds that Defendants are entitled to a stay of the judgment upon posting a bond in the full judgment amount while their appeal is pending in the Second Circuit.

Many of Defendants' arguments seek to re-litigate the issues determined in the Court's Summary Judgment Order. *See, e.g.*, Opp. to Damages Briefing at 7 ("The CBA . . . requires the Union to offer membership. Not only did the Union not offer membership, but it also refused to

give membership . . . ."); *id.* ("[The CBA] does not say that the Plaintiffs get to impute and then collect benefits payments as if the non-members were members."). Defendants further emphasize that, despite due diligence, they did not know—and could not have known—that they were required to pay the relevant benefits. *See, e.g.*, *id.* at 3 ("Defendants never avoided contribution payments but rather complied with state and federal law with the full knowledge and tacit consent of the union."); *id.* at 9 ("Plaintiffs researched the issue of the requirements for NYCHA multiple times by multiple people."). In assessing the instant motions, the Court does not re-examine its findings that waiver and estoppel are not applicable defenses in this context, or that "Blade Contracting, by complying with their obligations under the collective bargaining agreement, would not have violated applicable law." Liability Opinion at 2. The Court ordered that any opposition to damages and costs should "not contest the fact of Defendants' liability." Liability Opinion at 26. So, to the extent that Defendants' arguments contest liability, they are denied here and will be taken up by the Second Circuit on appeal.

## I.    The Mason Tenders Union Is Entitled to Most of the Damages, Fees, and Costs It Seeks

At issue in the calculation of damages, fees, and costs here are the following categories: the principal delinquency of unpaid contributions, interest on the delinquency, liquidated damages, imputed audit costs, legal fees, and costs. The Court assesses each category in turn, ultimately endorsing Plaintiffs' proposals in all but one instance, and requiring downward calculations to adjust for the non-jurisdictional employees improperly included in the principal delinquency.

### A.  Principal Delinquency

Both the CBA and ERISA require Defendants to pay unpaid contributions where judgment is rendered in Plaintiffs' favor. ECF No. 69 ("Joint 56.1 Stmt.") ¶ 26; 29 U.S.C.

5

§ 1132(g)(2)(A). It is undisputed that the audit's net unpaid contribution finding was $203,083.81 based on deficiencies and credits in fringe benefit contributions, dues checkoffs, and Political Action Committee contributions. Joint 56.1 Stmt. ¶¶ 40–42. In total, the parties agreed that Defendants submitted payments for "Audit 01/01/2016-03/28/2021" totaling $52,352.24. *See id.* ¶¶ 46–48. The outstanding principal alleged by Plaintiffs and found by the audit is thus $150,731.57. Lyons Dec. ¶ 43.

Defendants seek to challenge the delinquency calculation on two specific grounds: that it included non-jurisdictional workers and that it accounted for hours worked before workers were required to join the Union under the CBA.

### 1. Collateral Estoppel Does Not Bar Defendants From Challenging the Audit Findings as Non-Jurisdictional

Plaintiffs seek to preclude Defendants' arguments regarding the number of hours considered by the audit through collateral estoppel, arguing that Defendants contradict their previous representations and seek to re-litigate issues already determined by the Court in its Liability Opinion. ECF No. 80 ("Reply") at 2–4. Thus, the Court must first address whether Defendants can raise a challenge to the audit's findings of "covered work"—or work within the trade and geographic jurisdictions of the Union—at this juncture, given previous opportunities and failures to do so.

"Collateral estoppel, or . . . issue preclusion, means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (cleaned up). It applies when four conditions are met: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue

was necessary to support a valid and final judgment on the merits." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) (quoting *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)).

Here, collateral estoppel does not apply. In its Liability Opinion, the Court declined to make any findings on proper damages and "deni[ed] the current calculations." Liability Opinion at 12. Instead, it determined that Defendants were required to make fringe benefit contributions on behalf of Local Hires within the jurisdictional reach of the CBA. Liability Opinion at 18. The Court's prior decision explicitly provided Defendants with an opportunity to make "any good faith, reasonable objections to the revised proposed judgment" and only instructed Defendants not to contest the fact of liability. Liability Opinion at 26. Defendants' proposed challenges to the audit accord with these instructions, and Plaintiffs received adequate opportunity to contest them. Final judgment on damages has not been entered in this case. There is no need to evaluate each factor because the Court did not resolve the issue of damages, so it could not have been necessary to a valid and final judgment on the merits. As such, Defendants' arguments about the delinquency amount are not barred by collateral estoppel.

Similarly, jurisdictional arguments as to individual employees are not barred. The Court's prior opinion did not contemplate that some Local Hires were employees outside of the CBA's jurisdiction. *See* Liability Opinion at 13 ("The parties do not appear to dispute that the Master CBA's scope covered the Ingersoll Project because it occurred in the geographical and trade jurisdiction of the Mason Tenders Union as expressed in the Master CBA—namely, masonry and construction work in the Greater New York City Area."). And each individual employee's status was not germane to the liability question decided by the Court. To the extent the audit reflects inaccuracies, Defendants were not barred from raising them in their damages briefing.

7

### 2. Jurisdictional Restrictions on Local Hire Hour Calculations

Defendants argue that Plaintiffs' calculations include 582.5 excess hours for Local Hires, because some of the workers "did not do jurisdictional work of the Mason Tenders/Laborers." Opp. to Damages Briefing at 6. Specifically, Defendants contend that three included Local Hires "worked as steel setters and did not do any Local 79 work." ECF No. 75-5 ¶ 2. The CBA itself excludes steel setters. The steel-related jobs covered by the CBA only involve foundation laying or demolition: namely, (1) "[m]ixing and placing concrete in the . . . foundations for structural, steel, frame, or stone buildings"; (2) "placing steel forms . . . or any other forms for concrete foundations where said work has been awarded to Mason Tenders"; and (3) performing steel work involving the demolition or tearing down of steel components. *See* CBA Art. IV §§ 1(g), 1(u), 3, 3(a), 3(m); *see also* Joint 56.1 Stmt. ¶ 28.

Plaintiffs do not appear to dispute that the identified three Local Hires were steel setters or that steel setters are not covered by the CBA. Plaintiffs previously asserted that these workers were all classified on payroll reports as, variously, "Cement and Concrete Workers LABORERS Journeyman," "Laborer," or "Laborer-LAB0078-001." Plaintiffs' 56.1 Stmt. ¶¶ 168, 179, 181. The record supports that all three men were classified as "Cement and Concrete Workers LABORERS Journeyman" in the cited documents. *See* ECF No. 51-7 at 2, 6, 10, 14, 18, 22, 26, 30, 34, 37, 41, 45, 50, 53, 58, 65. Defendants did not challenge these characterizations of the payroll reports in their responsive 56.1 Statement, *see* ECF No. 61, and thus they are deemed admitted. *See* Local Civil Rule 56.1(c).

Still, the Court finds that Defendants' argument as to non-jurisdictional steel setters does not contradict their previous representations. The statements about laborers' tasks in the Joint 56.1 Statement, *see* ¶¶ 59–61, do not purport to be an exclusive list of jobs that Defendants

8

employed laborers to do. The Joint 56.1 Statement also states that "Defendants' employees, both Union and Section 3, performed . . . all other masonry work on the Ingersoll Job, *including setting the steel in preparation for the masonry work*." Joint 56.1 Stmt. ¶ 57 (emphasis added) (cleaned up). That three employees were misidentified among 110 pages of payroll records, *see* ECF 51-7, does not estop Defendants from correcting that mistake now. Consequently, the Court finds that the presence of steel workers outside the jurisdictional reach of the CBA warrants a downward adjustment to the damages calculations for the principal delinquency.

However, the hours calculation furnished by Defendants originates from materials that Plaintiffs contend should be precluded. Plaintiffs argue that the Court should not consider testimony or exhibits introduced through the Declaration of Debra Brucato, ECF Nos. 75-1 to 75-4, because she was not identified in Defendants' 26(a) disclosures. ECF No. 76 at 3. Plaintiffs further contend that several of those exhibits were not turned over in discovery. *Id.* Rule 37 instructs that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Defendants' failure to identify Ms. Brucato in their 26(a) disclosures is harmless. Indeed, Plaintiffs identify no prejudice they would suffer as a result, and nowhere in their briefing do they challenge the content of Ms. Brucato's calculations. Plaintiffs could have requested an extension if more time was needed to oppose Defendants' arguments, but they did not. Instead, Plaintiffs seek preclusion without providing any argument against the substance of Ms. Brucato's calculations. Accordingly, the Court finds that Ms. Brucato's testimony is not barred under Rule 37 and thus considers it to be conclusive in the absence of substantive opposition from Plaintiffs. A downward adjustment of 582.5 hours is appropriate.

### 3.    Delayed Accrual of Benefits Impacting Local Hour Calculations

The Court disagrees with Defendants' arguments that benefits did not accrue during the eight days workers on a project were given to join the Union. In making their argument, Defendants cite to Article III § 1 of the CBA, which pertains to fees and dues that employees must remit to the Union. Opp. to Damages Briefing at 6–7. The fringe benefits at issue in this case, however, pertain to the obligations spelled out in Article VI § 4-7 of the CBA, which discusses the routine contributions that the Employer must make to the Union Funds. Defendants fail to make any connection between the eight days at issue in Union membership and the fringe benefits owed by an Employer, and thus the Court rejects this argument.

### B.    Late Interest and Liquidated Damages

In their Joint 56.1 Statement, the parties agreed that in the event the Court issued a judgment "in the Funds' favor for delinquent contributions, the CBA requires Blade to pay . . . (ii) interest on unpaid contributions determined by using the rate prescribed under Section 6621 of the Title 26 of the United States Code; [and] (iii) interest on the unpaid contributions as and for liquidated damages." Joint 56.1 Stmt. ¶ 26. ERISA similarly requires the Court to award interest on the unpaid contributions "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26," and liquidated damages that are the greater of interest on the unpaid contributions or, if provided for by the plan, 20% of the unpaid contributions. 29 U.S.C. § 1132(g)(2). Here, because the CBA provides for liquidated damages that equal interest, the larger amount will be equal to the interest on the unpaid contributions, and the Court must thus impose that as liquidated damages.

Defendants contest the imposition of interest and liquidated damages, *see* Opp. to Damages Briefing at 9, but fail to provide any basis on which the Court should grant relief from

the CBA or diverge from statutory requirements. Accordingly, the Court grants interest and liquidated damages, and will order Plaintiffs to submit a proposed judgment that includes these amounts consistent with this Order.

### C.  Imputed Audit Costs

As the Court's Liability Opinion stated, "'[c]osts' include auditor fees if provided for in the CBA." Liability Opinion at 24–25 (citing *Trs. of Four Joint Bds. Health & Welfare & Pension Funds v. Penn Plastics, Inc.*, 864 F. Supp. 342, 350-51 (S.D.N.Y. 1994); *Trs. of the Operating Eng'rs Loc. 137 v. WJL Equities Corp.*, No. 14-CV-2640 (VB), 2016 WL 1369547, at *3 (S.D.N.Y. Apr. 6, 2016)). In this case:

> The CBA provides that if an audit of Blade books and records reveals a delinquency that is greater than 10% of the contributions paid to the Funds during the period covered by the audit, then the Blade is "substantially delinquent" and are [sic] liable to the Funds for the imputed cost of the audit, calculated by dividing the principal fringe benefit delinquency by 150 then multiplying the results by the number of months of the period covered by the audit.

ECF No. 55 ¶ 36. Because Defendants fail to provide any basis for relief from the CBA, the Court now turns to whether the threshold has been met here.

According to the audit, the total fringe benefit contributions during the covered time period is $480,076.70, and the 10% threshold is $48,076.07. ECF No. 51-1 at 5. Even with a downward adjustment for non-jurisdictional workers, the principal delinquency is approximately three times the 10% threshold.  Accordingly, the threshold specified in the CBA has been met, and Defendants are liable for the imputed costs of the audit. Plaintiffs are directed to submit a revised imputed cost for the audit based on the adjusted principal delinquency stated herein.

### D.  Legal Fees and Costs

Both ERISA and the CBA require the Court to award reasonable attorneys' fees and costs stemming from the instant action. *See* Joint 56.1 Stmt. ¶¶ 25–26; 29 U.S.C. § 1132(g)(2)(D).

11

Here, the Court finds that the lodestar proposed by Plaintiffs is reasonable and supported by the standards in this District.

Although Defendants do not challenge the reasonable hourly rates billed by Plaintiffs, the Court reviewed Plaintiffs' submissions to determine whether their rates are reasonable. Gorlick, Kravitz & Listhaus, P.C. (GKL) requests an hourly rate for partners at $325; senior associates at $275; associates at $175 and $225; law clerks at $135; and paralegals at $85. Damages Briefing at 2–3; Lyons Dec. ¶¶ 29–37. Contrary to Defendants' argument, Plaintiffs provided sufficient explanation of the backgrounds and experience levels of the attorneys and paralegals working on the case to justify the rates sought. *See* Lyons Dec. ¶¶ 27–37. Courts in the Southern District of New York have previously approved similar hourly rates. *See, e.g.*, *Chuk On Chan v. Good Chows Inc.*, No. 16-CV-2794 (RJS) (SN), 2017 WL 9538901, at *7 (S.D.N.Y. Mar. 3, 2017), *report and recommendation adopted*, 2017 WL 6550689 (S.D.N.Y. Dec. 21, 2017) (compiling S.D.N.Y. cases to find that "a fee ranging from $250 to $450 per hour is appropriate for experienced civil rights and employment law litigators"); *New York Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (finding "$425.00 per hour for partners, $300.00 per hour for associates, and $150 per hour for paralegals" to be reasonable hourly rates in an ERISA action). Thus, the Court approves the hourly rates requested.

The Court also finds the 680.1 hours expended by GKL to be reasonable in this litigation. *See* Lyons Dec. ¶¶ 17–21, 24–25. Courts have approved similar and higher hours in comparable cases. *See, e.g.*, *New York Dist. Council of Carpenters Pension Fund*, 657 F. Supp. 2d at 423 (approving 780.9 hours after a grant of summary judgment in an ERISA case); *Sullivan as Tr. of Stone Setters Loc. 84 Pension Fund, Annuity Fund, Vacation Fund, Apprentice Fund, & Indus.*

12

*Promotion Fund v. Prestige Stone & Pavers Corp.*, No. 16-CV-3348 (AT) (DF), 2020 WL 2859006, at \*14 (S.D.N.Y. Feb. 4, 2020), *report and recommendation adopted*, 2020 WL 1528117 (S.D.N.Y. Mar. 30, 2020) (approving 653.85 hours after granting summary judgment in an ERISA case).

Defendants raise concerns about the number of hours claimed, including taking issue with seeking default judgment before Defendants received the Complaint and multiple attorneys reviewing the case file. Opp. to Damages Briefing at 8–9. In doing so, however, Defendants acknowledge that service was proper, *id.* at 8, and that they failed to timely respond to the Complaint, prompting the need for Plaintiffs to file a default judgment motion. *See* ECF No. 7. Similarly, it is standard for firms in this District to litigate through summary judgment with multiple attorneys. *See, e.g.*, *New York Dist. Council of Carpenters Pension Fund*, 657 F. Supp. 2d at 424 (awarding attorneys' fees to eight attorneys after a grant of summary judgment in an ERISA case). Defendants also fail to point to any particular time entries that are needlessly duplicative. Consequently, the Court awards GKL $151,720.50 in legal fees.

The costs requested here are also reasonable. ERISA Section 515 explicitly provides for coverage of reasonable costs. *See* 29 U.S.C. § 1132(g)(2)(D). And under fee-shifting statutes, attorneys' fees "normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). Costs that cover required filing and service of process fees, together with one deposition, *see* Lyons Dec. ¶¶ 40–42, satisfy that standard, and the Court awards GKL $2,291.80 in costs.

## II.    Defendants May Exercise Their Right to Stay the Judgment By Posting Bond

Defendants argue that a stay of judgment pending appeal is warranted because this is a

case of first impression. ECF No. 83 ("Stay Motion") at 2.[1] Rule 62 entitles Defendants to a stay

of the judgment "[a]t any time after judgment is entered" by "providing a bond or other

security." Fed. R. Civ. P. 62(b). When considering whether to waive the supersedeas bond

requirement, courts consider the following non-exclusive factors:

> 1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*In re Nassau Cnty. Strip Search Cases*, 783 F.3d 414, 417–18 (2d Cir. 2015). These factors

"address the primary purpose of [the rule]: to ensure recovery for a party who ultimately prevails

on appeal, and to protect the judgment debtor from the risk of losing the money if the decision is

reversed." *Id.* at 418.

The *Nassau County* factors "contemplate waiving the requirement of a supersedeas bond

because a court is satisfied that the debtor would be able to pay the judgment with ease." *John*

*Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 649 (S.D.N.Y. 2018) (citing

*Butler v. Ross*, No. 16-CV-1282 (DLC), 2017 WL 6210843, at *3 (S.D.N.Y. Dec. 7, 2017);

---

[1] Defendants' Stay Motion inappropriately relies on Rule 62(c), which provides for a stay of "an injunction receivership, or patent accounting order." Fed. R. Civ. P. 62(c). As such, the case law cited in their moving papers is largely inapposite. *Compare* Stay Motion at 3–5 (structuring legal analysis around factors enumerated in *Hilton v. Braunskill*, 481 U.S. 770 (1987), a case regarding a stay of an order granting a habeas corpus petition) *with Moore v. Navillus Tile, Inc.*, No. 14-CV-8326 (CM), 2017 WL 4326537, at *3 (S.D.N.Y. Sept. 28, 2017) ("[T]he Circuit made it quite explicit that the *Hilton* factors did not apply to motions seeking relief from the requirement of [the former] Rule 62(d).").

*Rivera v. Home Depot USA Inc.*, No. 16-CV-7552 (KBF), 2018 WL 3105069, at \*3 (S.D.N.Y. June 25, 2018)). "Significantly, the bond requirement is not designed to protect the judgment debtor's ability to continue in business; rather, it is designed to minimize or eliminate the risk that it will pay the judgment, only to find that it cannot get the money back pending appeal." *Moore v. Navillus Tile, Inc.,* No. 14-CV-8326 (CM), 2017 WL 4326537, at \*1 (S.D.N.Y. Sept. 28, 2017). The growing consensus in this Circuit is that a "judgment-debtors' assertions of impecuniousness weigh heavily against granting a stay without bond." *Xerox Corp. v. JCTB Inc.*, No. 18-CV-6154 (MAT), 2019 WL 6000997, at \*3 (W.D.N.Y. Nov. 14, 2019) (citing *Frye v. Lagerstrom*, No. 15-CV-5348 (NRB), 2018 WL 4935805, at \*3 (S.D.N.Y. Oct. 10, 2018); *Moore*, 2017 WL 4326537, at \*2). "In fact, a concession of inability to pay is often 'determinative' in this inquiry." *John Wiley & Sons, Inc.*, 327 F. Supp. 3d at 649 (quoting *Moore*, 2017 WL 4326537, at \*2); *see also, e.g.*, *Saadeh v. Kagan*, No. 20-CV-1945 (PAE), 2024 WL 5514998, at \*1 (S.D.N.Y. Feb. 14, 2024) ("That [the defendant] has claimed that he is unable to pay the judgment or for a bond supports not waiving the bond requirement, as he has not provided an acceptable alternative means of securing the judgment against him."); *Arch Ins. Co. v. Centerplan Constr. Co., LLC*, No. 16-CV-1891 (VLB), 2020 WL 8083658, at \*4 (D. Conn. Jan. 31, 2020) ("The threat of insolvency does not warrant granting relief from the security requirements of Fed. R. Civ. P. 63(b)."). As a result, "[t]he vast majority of courts in this district applying these factors have denied a motion to stay enforcement without a supersedeas bond." *Penzo v. Consol. Edison Co. of New York, Inc.*, No. 19-CV-7478 (MKV), 2025 WL 369708, at \*3 (S.D.N.Y. Feb. 3, 2025) (citations omitted).

The *Nassau County* factors thus weigh decisively in favor of requiring a bond for the full judgment amount from Defendants. Defendants have repeatedly stated that they cannot pay the

money judgment and remain in business. Blade's payroll manager attested that "[t]he total demand made by the Plaintiffs . . . would be devastating to the financial stability of Blade, which is small [sic], minority company." ECF No. 75-1 ¶ 14. An officer of Blade indicated that "if the judgment is enforced . . . the amount being sought will require Blade to close its doors and seek protection from the bankruptcy court to protect the payments coming in that are earmarked for labor and benefits for the current work." ECF No. 82 ¶ 4. Accordingly, the Court has low confidence in the availability of funds to pay the judgment and finds that a bond would not be a waste of money.

Defendants argue that, under the plain language of Rule 62, the Court may authorize "other security"—or a fully unsecured stay. ECF No. 84 at 4–5. Indeed, because the *Nassau County* factors are non-exclusive, "[i]t is in the district court's 'discretion' whether or not to waive the requirement of the bond." *Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 22-CV-1585 (LJL), 2024 WL 3755548, at *3 (S.D.N.Y. Aug. 12, 2024) (*quoting Butler*, 2017 WL 6210843, at *4). But Defendants cite no cases where unsecured stays have been granted to judgment-debtors who admitted their inability to pay. And the consensus in the Second Circuit indicates that their inability to pay is not a suitable basis on which to grant alternate security. Furthermore, Defendants do not ask for a partial bond, and the Court cannot craft one here. Defendants have not provided any guidance on a suitable threshold for a partial bond that would not imperil its creditors. The Court thus has "no way, on this record, of fashioning an appropriate alternative form of security in this case," even if it were inclined to do so. *See Moore*, 2017 WL 4326537, at *6. Consequently, the Court grants Defendants' Motion to Stay but requires a bond in the full judgment amount to be posted.

16

## CONCLUSION

To summarize, the Court finds that a downward adjustment of 582.5 hours in calculating

the principal delinquency proposed by Plaintiffs is warranted but otherwise approves Plaintiffs'

proposed methods for calculating interest, liquidated damages, and imputed audit costs. The

Court further approves legal fees of $151,720.50 and costs of $2,291. By **April 10, 2026**,

Plaintiffs are directed to submit a revised proposed judgment in line with this Order. The Court

hereby stays execution of the judgment pending appeal, subject to Defendants posting a bond in

the full amount of the judgment after it is ordered. The Clerk of Court is directed to terminate

ECF No. 81.

Dated:  March 27, 2026
       White Plains, New York

SO ORDERED.

_Jessica Clarke_

JESSICA G. L. CLARKE
United States District Judge

17